UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PHILANA PATTERSON,

               Plaintiff,

    -against-

BLOOMBERG, L.P.,
         Defendants.

------------------------------------------------------------x

Case Number:
**COMPLAINT AND JURY DEMAND**

COMES NOW, the Plaintiff Philana Patterson (hereinafter "Patterson" or "Plaintiff"), by and through her undersigned attorneys, The Law Offices of Neal Brickman, and as and for her Complaint against the Defendant Bloomberg, L.P., (hereinafter "Bloomberg" or "Defendant") states and alleges as follows:

## Preliminary Statement

1. The instant action seeks compensatory and punitive damages, costs and attorneys' fees, against Bloomberg for its unlawful discrimination against, and retaliatory treatment of Philana Patterson in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000, *et seq.* as amended, as well as applicable New York State and City statutes and the American's with Disabilities Act.

2. The Plaintiff, a black woman, alleges that she was discriminated against in violation of the American's with Disabilities Act and Federal State and Local anti-discrimination laws when Bloomberg denied her request to work from home, a reasonable accommodation for her disability that Bloomberg had granted to other white employees.

3. The Plaintiff further alleges that, when she complained to Human Resources about the fact that she was being denied a reasonable accommodation for her disability and that she was being treated differently and less favorably than other white employees, the Defendant retaliated against her by denying her a raise; giving her a negative evaluation; and refusing to let her return to a more prestigious assignment -- the Stocks team--to which Defendant had already agreed.

## Parties

4. The Plaintiff is a black woman. She is, and was at all times relevant hereto, a Citizen of the United States and a resident of the City of New York, residing at 335 Gates Avenue #2,

Brooklyn, New York, 11216.

5. Upon information and belief, Bloomberg is a corporation organized under and existing pursuant to the laws of the State of New York with its principal place of business located at 499 Park Avenue, New York, New York, 10022.

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 in that this matter presents the Court with a "federal question" as a claim herein arises under 42 U.S.C. § 2000(e), as amended, including, but not limited to, the Civil Rights Act of 1991 and 42 U.S.C. § 1988.

7. Venue is properly laid in this District based on the Defendant's residence and because all of the acts that form the basis of this action occurred in this district.

## Procedure Background

8. On or about March 30, 2004, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") related to a charging affidavit claiming discrimination and retaliation that she had previously filed with the EEOC. This action is filed within ninety (90) days of plaintiff's receipt of said Notice of Right to Sue from the EEOC. (A copy of the right to sue letter is attached hereto and made a part hereof as Exhibit "A")

## Factual Background

9. Patterson joined Bloomberg in January of 2001 as a full-time reporter for Bloomberg's News Stocks team. Patterson performed extremely well in this position.

10. During her initial six-month review, she received entirely positive feedback. In addition, her certificates were doubled. Despite the fact that Patterson's evaluation was entirely positive, Bloomberg declined to give her a raise.

11. On November 19, 2001, Patterson suffered a pulmonary embolism caused by three blood clots in her lungs. Patterson remained in the hospital until November 26, 2001. In addition, she had to take a prescription blood-thinner for months after being hospitalized.

12. Although Patterson attempted to return to work on December 13, 2001, her weakened physical condition made it difficult for her to function. Patterson took her unused vacation in order that she could remain absent through the end of the year.

13. Because Patterson was not recovering as quickly as her doctors had hoped, she was put on short term disability for approximately six weeks.

14. Although Patterson's doctors cleared her to return to work on February 13, 2002, they specifically advised Patterson that she should seek some accommodations in order to avoid physical exhaustion and so that her recovery could continue.

15. Patterson's doctors did not specify exactly what the accommodations should be. However, it was contemplated that, at a minimum, they would include limiting Patterson's work day to eight hours a day to reduce the physical stress on Patterson.

16. On February 27, 2002, Patterson was hospitalized again because of further medical complications. She remained hospitalized until March 1, 2002.

17. During her hospitalization, Patterson's doctors again urged her to seek accommodations from her employer because the hours and pressures involved in her position, combined with her commute, would make it difficult for her to have a smooth and complete physical recovery.

18. Upon Patterson's release from the hospital, Patterson's doctors issued a written recommendation that Patterson should not work more that eight hours a day. Patterson's doctor also indicated that some other accommodation should be put into place to reduce the physical demands on Patterson, but they did not specify what this other accommodation should be.

19. Consistent with this recommendation, Patterson requested permission to work from home two days a week for approximately a month. Because Patterson faced an arduous commute of at least an hour each way, this accommodation was the most logical way to reduce the physical demands on Patterson.

20. Patterson believed that this accommodation was unlikely to impact her productivity as many of Patterson's duties could be handled over the phone and on the internet.

21. Patterson's supervisor, Jim Hertling ("Hertling"), cursorily denied her request to work from home two days a week. Hertling did not give a reason for this denial. Moreover, even though Patterson's doctor had expressly restricted her from working more than eight hours a day, Hertling refused to respect this restriction. On several occasions, Patterson was required to stay late to work on stories.

22. Fearing for her health and safety, Patterson went to Human Resources and advised them that her supervisor had refused to accommodate her physical limitations. Specifically, she advised Human Resources that, not only had her supervisor declined her request to work from home two days a week, but her supervisor also refused to abide by her doctor's specific instructions that she work no more than eight hours a day.

23. Patterson further advised Human Resources that her ability to recover was dependant upon her being able to find a way to reduce the physical demands on her. In response, Patterson was advised that Bloomberg was a high-power company and would probably be unable to accommodate her.

24. Realizing that her immediate supervisor and Human Resources were unwilling to accommodate her and that her physical well-being depended upon her receiving more appropriate accommodations, Patterson believed that she had no choice but to seek employment elsewhere in the Company.

25. Reluctantly, Patterson agreed to leave her high-profile, prestigious position as a stock reporter and joined the less prestigious Forums team. She made it entirely clear-- and her supervisors expressly agreed--that this transfer-- was to be temporary and that Patterson would return to her position as a stock reporter within a year.

26. In October of 2002, Patterson received her one-year review for her work on the Stocks team. Although Patterson's six month review had been overwhelmingly positive, she received criticism during her one year review. Moreover, Patterson was again denied any raise.

27. Patterson found this odd inasmuch as her performance had not changed since her six-month review. The only thing that had changed was Patterson's illness, her request for a reasonable accommodation and her resulting transfer.

28. Concerned that the decision to deny her a raise might be motivated by discrimination rather than legitimate business concerns, Patterson submitted a complaint (hereinafter the "Human Resources Complaint") to Human Resources.

29. The Complaint set forth the difficulty that Patterson had encountered seeking an accommodation for her physical condition. The complaint further specified that a white woman, Perri McKinney, had received precisely the accommodation that Patterson was seeking, but that had been denied to her.

30. In February of 2003, Patterson received a review for her work on the Forums program. Patterson, her immediate supervisor, Michelle Peal ("Peal"), and Peal's supervisor, Carolynn Fedor ("Fedor"), attended the review. During the review, Patterson advised Peal and Fedor that she wanted to return to stocks as originally agreed. In response, Fedor advised Patterson that things had changed and that Patterson would not be permitted to return to stocks. Patterson was not given any explanation for this decision.

31. Moreover, Patterson was told that she would again not receive a raise, even though her review was predominantly positive. Specifically, Patterson was advised that she was not eligible to receive a raise because she was already one of the highest paid members of the Forums team. Patterson found this odd. She had never been informed that she would not be eligible for a raise as a member of the Forums team.

32. Prior to this review, Peal had approached Patterson saying that she had never seen such scrutiny over a review. Specifically, Peal advised Patterson that she received a phone call from Human Resources suggesting that there were problems with Patterson's work and that these problems should be reflected in Patterson's review. In response, Peal denied that there were any problems with Patterson's work and stated that Patterson was doing a good job.

33. In May of 2003, the Forums team was disbanded. Peal, who had previously supervised an entire team, was moved to a position without any supervisory responsibilities. Patterson was moved to Bloomberg Radio and was, ultimately, placed on the Countdown show. Because the fast pace of the Countdown show did not allow Patterson to break for lunch or take other necessary breaks, Patterson requested and was granted a transfer to another radio show.

34. Throughout this process, Patterson continually maintained and expressed an interest in returning to her former position as a stock reporter as originally agreed. Bloomberg refused to comply with its agreement to return Patterson to this position.

## COUNT I
### (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990)

35. Patterson incorporates by reference paragraphs 1 through 34 of the complaint as if such paragraphs were fully restated herein.

36. On November 19, 2001, Patterson suffered a pulmonary embolism caused by three blood clots in her lungs. The pulmonary embolism left Patterson in a severely weakened state. As a result, Patterson is substantially impaired in her ability to perform major life activities such as walking and other forms of physical exertion.

37. As a result, Patterson is an individual with a disability within the meaning of the Americans with Disabilities Act.

38. In addition, Bloomberg had knowledge of Patterson's disability and Patterson was perceived by Bloomberg as an individual with a disability.

39. Despite her disability, Patterson was still able to perform the essential functions of her job with reasonable accommodations. Specifically, Patterson was able to perform the essential functions of her job from home because almost all of her work could be done over the phone and on the internet.

40. Because of Bloomberg's failure to provide Patterson with a reasonable accommodation, Patterson was forced to leave her position on the stocks team and transfer to a less prestigious position.

41. The foregoing constitutes a continuing pattern of discriminatory conduct in violation of the Americans with Disabilities Act.

42. This pattern of discriminatory conduct continues to date and includes Bloomberg's failure to reinstate Patterson to the Stocks team in accordance with its initial agreement.

43. As a direct and proximate result of this discrimination, Patterson has suffered damages including loss of past and future earnings, other employment benefits and emotional

injuries.

44. Bloomberg is an employer within the meaning of the Act, employing more than 25 employees.

**WHEREFORE**, Patterson demands judgment against defendant Bloomberg for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 and for punitive damages in an amount to be determined at trial, but not less than $3,000,000.00 together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II

### (RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964)

45. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "44" of the Complaint with the same force and effect as if fully set forth herein.

46. Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of gender or race.

47. During her employment with Bloomberg, Patterson was treated differently and less favorably than other similarly situated employees who were white. This pattern of discriminatory conduct continues to date and includes denying Patterson accommodations that were afforded to other white employees; denying her raises; negatively impacting her review; and refusing to allow her to return to the stocks team as originally agreed.

48. When Patterson complained about this conduct she was subject to unlawful retaliation, which included denying her raises; negatively impacting her review; and refusing to allow her to return to the stocks team as originally agreed.

49. As a direct and proximate result of this discrimination and unlawful retaliation, Patterson has suffered damages including loss of past and future earnings, other employment benefits, and emotional injuries. She also suffered retaliation as a result of complaining about the unlawful discrimination.

**WHEREFORE**, Patterson demands judgment against defendant Bloomberg for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 and for punitive damages in an amount to be determined at trial, but not less than $ 300,000.00 together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT III
### (VIOLATION OF EXECUTIVE LAW § 296)

50. Paragraphs 1 through 48 of the complaint are incorporated herein with the same force and effect as if pleaded separately.

51. By reason of the acts of discrimination and retaliation detailed herein, defendant has violated New York Executive Law § 296(1)(a), and has caused plaintiff to suffer damages, including loss of past and future earnings, other employment benefits, and emotional injuries.

**WHEREFORE**, Patterson demands judgment against defendant Bloomberg for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 and for punitive damages in an amount to be determined at trial, but not less than $3,000,000.00 together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT III
### (VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107 AND § 8-502)

52. Paragraphs 1 through 51 of the complaint are incorporated herein with the same force and effect as if pleaded separately.

53. By reason thereof, defendants have violated New York City Administrative Code § 8-107 and § 8-502, *et seq.* and has caused plaintiff to suffer damages, including loss of past and future earnings, other employment benefits, and emotional injuries.

### Jury Trial Demanded

54. Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a jury trial on each and every issue in this action.

Dated: New York, New York
June 17, 2004

_____
Nicole van Gendt (NV 0323)
*Attorneys for the Plaintiff*
*Philana Patterson*
The Law Offices of Neal Brickman
630 Third Avenue-21st Floor
New York, N.Y. 10017
(212) 986-6840

**Exhibit A**

EEOC Form 161 (10/96)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Philana Patterson
335 Gates Avenue, #2
Brooklyn, NY 11216

From:
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

[ ]   *On behalf of person(s) aggrieved whose identity is* CONFIDENTIAL *(29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2004-00183 | Legal Unit | (212) 336-3721 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____    3/30/04
Spencer H. Lewis, Jr., District Director    *(Date Mailed)*

Enclosure(s)

cc: Respondent(s):
WILLKIE FARR & GALLAGHER LLP
Attn: Thomas H. Golden, Esq.
787 Seventh Avenue
New York, NY 10019-6099

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The **United States District Court for the Southern District of New York** is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester.

- The **United States District Court for the Eastern District of New York** is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk.

- The **United States District Court for the Western District of New York** is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates.

- The **United States District Court for the Northern District of New York** is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *pro Se* Attorney has offices at 10 Broad Street in Utica New York.

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit **must** be filed in U.S. District Court within **90 days** of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

# DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

# WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $120.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

# HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(312) 988-5522

New York State Bar Association
(800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

# HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**